U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 2 0 2005

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| IDA GARTH WILLIAMS,<br>Appellant | CIVIL ACTION<br>NO. CV04-0893-M |
| VERSUS | |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE ROBERT G. JAMES<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
--- 

Ida Garth Williams ("Williams") filed an application for supplemental security income ("SSI") benefits[1] on October 14, 1998, alleging a disability onset date of February 1, 1997 (Tr. p. 62), due to asthma and high blood pressure (Tr. p. 115). That application was denied by the Social Security Administration

---

[1] Supplemental Security Income disability benefits, authorized by Title XVI of the SSA, provides assistance to the disabled needy without regard to the claimant's history of coverage under the Social Security Act. Its qualifying financial tests are income and resource tests. Ineligibility for DIB under Title II does not affect eligibility for SSI under Title XVI. Thomas v. Schweiker, 666 F.2d 999, 1001 (5th Cir. 1992).
   To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

("SSA") on April 7, 1999 (Tr. p. 49). Williams did not request a hearing.

Williams filed a second application for SSI on April 30, 2002 (protective filing date), alleging a disability onset date of February 1, 1997, due to high blood pressure (Tr. pp. 66-67). That application was also denied by the SSA (Tr. p. 53).

A de novo hearing was held before an administrative law judge ("ALJ") on February 19, 2003, at which Williams was present with her attorney and a witness (Tr. p. 436). A supplemental hearing was held on September 24, 2003, at which Williams was present with her attorney and a medical expert (Tr. p. 464). The ALJ concluded that, although Williams suffers from "severe" hypertension, diabetes mellitus, coronary artery disease, and degenerative disc disease of the lumbar spine and knees, she has the residual functional capacity to perform the full range of light work and Rules 202.17 and 202.10 of Table 2 of the Medical Vocational Guidelines ("the grids"), set forth in Appendix 2, directed a finding of "not disabled" at any time through the date of his decision on November 4, 2003 (Tr. pp. 22-23).

Williams requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 7), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). Williams next filed this appeal for judicial review of the Commissioner's final decision. Williams'

raises the following grounds for review on appeal:

1. The Commissioner erred in relying on the equivocal testimony of a non-examining medical expert in determining Williams' residual functional capacity instead of the consistent opinions of the examining physicians of record.

2. The ALJ's credibility finding is not based on substantial evidence.

3. The court should remand the case to the Commissioner with instructions to award benefits.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823

(5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Williams (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is

determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Williams has never engaged in substantial gainful activity, and that she has severe impairments of hypertension, diabetes mellitus, coronary artery disease, and degenerative disc disease of the lumbar spine and knees, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 19).

At Step No. 5 of the sequential process, the ALJ further found that Williams has the residual functional capacity to perform the full range of light work (Tr. p. 22). The ALJ found that the

claimant was an "individual closely approaching advanced age" with a fifth grade education and no transferable work skills (Tr. p. 22). The ALJ concluded that Rules 202.17 and 202.10 of the Medical-Vocational Guidelines in Appendix 2 directed a conclusion of "not disabled" and, therefore, Williams was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on November 4, 2003 (Tr. pp. 22-23).

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find that there is substantial evidence in the record as a whole to support the Commissioner's decision of non-disability and the Commissioner's decision comports with all relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed.R.Civ.P. rule 52, I note that the Commissioner's findings and conclusions put at issue by appellant are supported by substantial evidence, which can be outlined as follows.

Issue No. 1 - Medical Evidence

First, Williams contends the Commissioner erred in relying on the equivocal testimony of a non-examining medical expert, Dr. George Anderson, in determining Williams' residual functional capacity, instead of the consistent opinions of the examining physicians of record. Williams argues the medical evidence and

opinion from Dr. Dean in March 1999 indicates she is disabled.

Generally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician. Carry v. Heckler, 750 F.2d 479, 484 (5th Cir. 1985). However, the weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir. 1983). An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981).

In November 1998, Dr. David Hebert, an internist with a specialty in pulmonary diseases (Tr. p. 204), examined and x-rayed Williams and diagnosed chest pain of uncertain etiology, untreated moderate arterial hypertension, both degenerative disc disease and osteoarthritis of the lumber spine, moderate degenerative disc disease and osteoarthritis of both knees, and a history of diabetes mellitus which was currently untreated (Tr. pp. 156-159). Dr. Hebert noted, however, that he had only x-rayed Williams' left knee since was the worst (Tr. p. 159). Dr. Hebert stated that Williams' severe osteoarthritis and degenerative disc disease of the lumber spine and both knees made walking about and doing any type of physical activity severely difficult for her at that point in time

7

(Tr. p. 159). Dr. Hebert noted Williams has difficulty rising from a sitting to a standing position, stated she should not lift more than 10 to 15 pounds, and again noted that her diabetes mellitus and arterial hypertension were completely untreated at that time (Tr. p. 159).

In March 1999, Dr. A. E. Dean, an orthopedic surgeon, examined and x-rayed Williams for complaints as to her left knee, left wrist, right thumb and lower back (Tr. pp. 169-171). Dr. Dean diagnosed degenerative arthritis of the left knee and stated Williams would have difficulty being on her feet for eight hours a day as well as with bending and squatting (Tr. p. 170).

In March 2002, Williams was diagnosed with hyperglycemia, nonspecific chest pain, and hypertension (Tr. pp. 172-173). Dr. Allen Spires recommended that Williams undergo a heart catheterization, but Williams decided to wait and have it done as an outpatient (Tr. pp. 196-197). In July 2002, Williams was diagnosed with hypertension and pleural edema and given medication (Tr. p. 208). Dr. Mahmoud S. Kahlil, a cardiologist, examined Williams and found she had symptoms and clinical findings of Class III to IV congestive heart failure, needed several studies which she could not afford, and was started on Nitroglycerin for pain and her Lasix was increased (Tr. pp. 217-225). In November 2002, Williams was treated for congestive heart failure, uncontrolled diabetes mellitus, and hypertension (Tr. pp. 236-240). Finally, in

February 2003, Williams underwent a coronary catheterization (Tr. pp. 362-363), which revealed mid-right coronary artery 99% stenosis before dilation, with lesions and a 45% left ventricular ejection fraction was estimated, and two vessel disease was diagnosed; there 0% stenosis after the stent was inserted (Tr. pp. 368-372).

The medical expert who testified at the September 2003 hearing, Dr. George Anderson, a cardiologist (Tr. p. 469), testified the medical records did not indicate Williams has any lesions remaining after the stent was inserted or that she had seen a doctor since her heart catheterization (Tr. pp. 470-471). Dr. Anderson admitted Williams could still be having trouble with her heart since the stint was inserted, but it needed to be proven with appropriate testing; there were not any medical records supporting Williams' claims (Tr. pp. 472-473, 476). Dr. Anderson testified that, based solely on the medical records he had reviewed, he believed Williams could lift up to 20 pounds frequently (Tr. pp. 474-476). Dr. Anderson further testified there was no medical evidence since about 1998 that supported Williams' claims of limitations due to arthritis (Tr. p. 478).

Williams claims Dr. Dean's report shows she is disabled; Dr. Dean stated Williams' would have trouble being on her feet eight hours a day and would have trouble bending and squatting. Moreover, Dr. Hebert stated that walking about and doing any type of physical activity is severely difficult for Williams, and that

she has difficulty rising from a sitting to a standing position. Dr. Dean's and Dr. Hebert's opinions are based on the results of diagnostic imaging. Although, as Dr. Anderson, the non-examining expert consultant, pointed out, the more recent medical records only mention that Williams has arthritis without discussing her limitations from it, it is apparent from the medical records that Williams has arthritis. Nothing in the medical records refutes Dr. Hebert's and Dr. Dean's assessments as to Williams' arthritis.

The ALJ found Williams can perform the full range of light work. "Light work" is defined in 20 C.F.R. § 416.967(c) as follows:

> "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

Social Security Ruling 83-10, "Titles II and XVI: Determining Capability to do Other Work - The Medical-Vocational Rules of Appendix 2," 1983 WL 31251, 5 (S.S.A.), states in pertinent part:

> "2. Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, *a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.* A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in

10

sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). *Relatively few unskilled light jobs are performed in a seated position.*" (Emphasis added.)

Also, SSR 85-15, "Titles II and XVI: Capability to do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," 1985 WL 56857, *6-*7 (S.S.A.), states:

"b. Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. *If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.* (Emphasis added.)

Finally, SSR 85-15, "Titles II and XVI: Capability to do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," 1985 WL 56857, *2 (S.S.A.), states that nonexertional limitations can affect the abilities to bend the legs alone (kneel) and to bend the spine alone (stoop) or bend both the spine and legs (crouch).

It is clear the ALJ erred in wholly disregarding the medical evidence from two examining physicians as to the existence of and physical limitations imposed by Williams' arthritis. Dr. Anderson, the expert consultant, admitted he had not examined Williams and had only reviewed the medical records. The ALJ's conclusion that Williams can perform the full range of light work is inconsistent with the examining physicians' findings that Williams is or is

11

nearly unable to stoop or squat, and has difficulty walking. Compare Fruge v. Harris, 631 F.2d 1244 (5th Cir. 1980). Also, Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004). Moreover, it is also pertinent that few unskilled light jobs are performed in a seated position, since Williams is unskilled and has only a fifth grade education.

Therefore, substantial evidence does not support the ALJ's conclusion that Williams can perform the full range of light work, and Williams' case should be remanded to the Commissioner for further proceedings.

Ground No. 2 - Credibility

Next, Williams contends the ALJ's credibility finding is not based on substantial evidence. The ALJ stated in his decision (Tr. p. 20):

> "The Administrative Law Judge recognizes that the claimant may experience some degree of discomfort from time to time but this is not inconsistent with the performance of light, sustained work activity. Neither the objective medical evidence nor the testimony of the claimant establishes that the ability to function has been so severely impaired as to preclude all types of light work activity.
> \*     \*     \*
> "The Administrative Law Judge has considered the claimant's alleged multiple severe impairments, which according to her caused significant limitations on her ability to perform all work-related activities. As explained, significant limitations have been assessed to the claimant's residual functional capacity, which allow for her subjective complaints and limitations. However to the extent the claimant alleged being totally precluded from all work-related activities, these subjective complaints regarding the severity of limitations caused by her impairments are considered

credible only to the extent they are supported by the objective evidence and consistent with the residual functional capacity."

The ALJ essentially only states in his reasons that Williams' subjective complaints are accepted to the extent they are consistent with the objective medical evidence. Since, as discussed above, the ALJ erred in disregarding the objective medical evidence as to Williams' arthritis and resulting impairments, the extent to which Williams' subjective complaints are considered credible must be reassessed on remand.

## Ground No. 3 - Award of Benefits

Finally, Williams argues this court should remand her case to the Commissioner with instructions to award benefits.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Williams to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Williams can perform, given her true impairments. Therefore, and award of benefits at this time would be inappropriate. This case should be remanded to the Commissioner for further proceedings to determine whether Williams is entitled to benefits.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the

final decision of the Commissioner be VACATED, and that Williams' appeal be GRANTED and her case REMANDED to the Commissioner for further proceedings consistent with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 20 day of July, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE